## 5710.   ELMORE *v.* THE STATE.

One under arrest who, without provocation, uses opprobrious words or abusive language to or of the officer who has him in legal custody, and in the officer's presence, is punishable under section 387 of the Penal Code, if the character of the words or language is such as would ordinarily and naturally tend to cause a breach of the peace when addressed to a private person.

DECIDED DECEMBER 22, 1914.

Indictment for misdemeanor; from Tattnall superior court— Judge Sheppard.   April 8, 1914.

*H. H. Elders,* for plaintiff in error.

*N. J. Norman, solicitor-general,* contra.

WADE, J.   Joe Elmore was convicted on an indictment charging him with using, without provocation, to and of two certain deputy sheriffs, and in their presence, opprobrious words and abusive language (too vile to quote here), which would naturally tend to cause a breach of the peace under ordinary circumstances.   The language was used by the defendant after he had been arrested by the officers and while he was in their custody.   A motion for a new trial, based on the usual general grounds alone, was overruled, and the case came here for determination.   Counsel for the plaintiff in error insists, with some degree of plausibility, that since the use of the alleged opprobrious words or abusive language by the defendant was after he had been arrested and while he was in the custody of the officers, the defendant did not thereby violate the statute, since the officers would not be legally justified in assaulting him on account of such words or language, and hence the language complained of could not tend to cause a breach of the peace.

The use, without provocation, to or of another and in his presence, of opprobrious words or abusive language "tending to cause a breach of the peace," is penalized by section 387 of the Penal Code.   Though the words fail to bring about a breach of the peace, the offense is complete if this would nevertheless be their ordinary and natural tendency.   The words of the statute, "tending to cause a breach of the peace," are words of description, indicating the kind or character of opprobrious or abusive language that is penalized, and the use of language of this character is a violation of the statute, even though it be addressed to one who, on account of circumstances or by virtue of the obligations of office, can not actually

then and there resent the same by a breach of the peace, but must for the present at least, and while the restraining circumstances or obligations exist, tamely submit thereto with such grace as he may be able to command. "An officer of the law can not justify an assault and battery upon his prisoner, on the ground that the beating was provoked by the use of opprobrious words or abusive language. Section 4694 [Section 103 of the Penal Code of 1910] of the code applies between private persons, not between public officers and those in their custody." *Burns* v. *State,* 80 *Ga.* 544 (3), 545 (7 S. E. 88). The law assumes that an officer entrusted with its enforcement will himself be guided by its mandates and controlled by its limitations; and since he may not legally assault one in his custody because of opprobrious words or abusive language, it further assumes that he will not for such a reason assault him illegally. Nevertheless, an officer is entitled to the same protection from opprobrious words or abusive language which the law affords to the private citizen; and in fact it would appear that an officer would be more entitled to such protection, because of the very fact that he is prohibited from protecting himself by force against any insults coming from one legally in his custody. Then, too, an officer should not be tempted to disobey the law, which wisely prevents him from replying with a blow to the vilest of verbal affronts from one in his legal custody, by the consciousness that, because of his assumption of the obligations and restraints of office, he has been shorn of that protection which is afforded to the humblest private citizen, and that even the grossest insults offered to him, under such conditions, must go unredressed, unless forcibly resented at the time. While such words or language will not justify an assault and battery by him upon one in his custody, such words may yet *tend* to cause him to forget the hampering restraints of office and produce a breach of the peace, and where the words or language used by a prisoner to an officer having him under arrest are of such character as would naturally tend to bring about a breach of the peace where addressed to a private citizen and not to one restrained by official obligations, the words are nevertheless criminal, notwithstanding the officer can not lawfully resent them at the time.

We do not think it can be logically maintained that if opprobrious words or abusive language which would, under ordinary circumstances, tend to cause a breach of the peace should be addressed to

one so situated at the time that such words could not for the moment cause a breach of the peace, their criminality would be destroyed because the existing circumstances put it out of his power to *immediately* resent them. Suppose that one, at a safe distance and out of hearing of any other than the person to whom he spoke, addressed such language to one locked in a prison cell or on the opposite bank of an impassable torrent, and hence without power to respond immediately to such verbal insults by physical retaliation, could it be reasonably contended that because no breach of the peace could then follow, the statute would not be violated? To illustrate further: if one privately addressed opprobrious words or abusive language to a paralytic, utterly unable to break the peace by any act of physical violence, could it be said he would not violate this statute, simply because the physical incapacity of the man he so addressed made it impossible for his words to produce a breach of the peace by the offended person, and hence that such words or language would not tend to produce a breach of the peace?

If words used would naturally and ordinarily tend to produce a breach of the peace when addressed to a normal man, not prevented by circumstances or physical limitations from properly resenting them by an assault and battery on the person of the offender, surely words of like character when addressed to one who is prevented by the solemn obligations of office from resenting gross insults (and therefore is legally as helpless as a paralytic) would constitute an offense under the statute, where no provocation for them appears. Again, though, on account of circumstances or obligations imposed by office, one may not be able at the time to assault and beat another on account of such language, it might still tend to cause a breach of the peace at some future time, when the person to whom it was addressed might be no longer hampered by physical inability, present conditions, or official position.

The evident intention of the legislature was to put a ban upon language of such character as would ordinarily and naturally tend to produce a breach of the peace, either at the time of its use or thereafter, even though the conditions existing at the time of its use might render it impossible for such language to produce a breach of the peace at that time; and hence the conviction in this case should be sustained.

*Judgment affirmed. Russell, C. J., dissents.*