38599. SAMUELS *et al.* v. THE STATE.

DECIDED JANUARY 18, 1961.

*B. Clarence Mayfield, E. H. Gadsden,* for plaintiffs in error.
*Eugene Cook, Attorney-General, G. Hughel Harrison, Assistant Attorney-General, Andrew J. Ryan, Solicitor-General, Sylvan A. Garfunkel,* contra.

CARLISLE, Judge. The defendants in this case, Arthur Samuels, Ellis Mobley and Mary Louise Law, were tried in the City Court of Savannah on an accusation charging them with the offense of a misdemeanor in that they "did assemble at Liggett Drug Company, Inc., for the purpose of disturbing the public peace and refused to disperse on being commanded to do so by sheriff, constable, and peace officer." The defendants are all negroes. Upon their trial before the judge, sitting without a jury, the evidence was not in dispute. It showed that the defendants entered the drug store in question on the afternoon of April 5, 1960, between 3:30 and 3:45 and took their seats on stools at the lunch counter for the purpose of seeking service at the counter, which had, by custom, been reserved for service to white people only. The personnel of the store informed the defendants that the lunch counter was closed, the lights over the counter were extinguished and the defendants were refused service. This action was taken because they were negroes. No employee of the store asked the defendants to leave. A police officer of the City of Savannah was called and he requested the defendants to leave the store. They refused to leave and he placed them under arrest. The evidence further showed that a number of white people and others had gathered outside the store, were looking in through the windows, and others had gathered inside the store. Several witnesses testified that in their opinion the presence of the defendants at the lunch counter would tend to create a disturbance. The defendants were charged with a misdemeanor under *Code* § 26-5301 which provides: "Any two

or more persons who shall assemble for the purpose of disturbing the public peace or committing any unlawful act, and shall not disperse on being commanded to do so by a judge, justice, sheriff, constable, coroner or other peace officer, shall be guilty of a misdemeanor." The trial judge found the defendants guilty and sentenced each to pay a fine of $100 or to serve five months in the public work camps. The defendants made a motion for a new trial on the general grounds, which motion was overruled, and the exception here is to that judgment.

The conviction of the defendants was authorized if the evidence adduced upon the trial of the case showed that the assembly of the defendants at the lunch counter of the drug store in question was for the purpose of disturbing the public peace. It is not disputed that their assembly was quiet, orderly and outwardly peaceable, and that what they did in and of itself did not amount to the disturbance of the public peace. However, this is not essential to their conviction. "The term 'breach of the peace' is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By 'peace,' as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense. . . The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to-break the peace. Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the com-

munity, are used, it amounts to a breach of the peace, although no actual personal violence is employed. . ." 9 C. J. 386, 387, Breach of the Peace, §§ 1 and 2. *Elmore v. State,* 15 Ga. App. 461 (83 S. E. 799); *Faulkner v. State,* 166 Ga. 645, 665 (144 S. E. 193). For a similar statement of the rule see 8 Am. Jur. 834, 835, Breach of Peace, §§ 3 and 4. "One may be guilty of the common-law offense of breach of the peace if he commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended." 8 Am. Jur., Breach of Peace, § 3, as amended by 1960 cumulative supp., p. 52; Cantwell v. Connecticut, 310 U. S. 296, 309 (60 S. Ct. 900, 84 L. Ed. 1213, 1221).

As pointed out above, the evidence in this case shows without dispute that the defendants entered the drug store in question in a quiet, peaceable and orderly manner; that they were not boisterous or otherwise unruly in their manner, but were courteous and quietly took their seats at the lunch counter requesting service. The manager of the store closed the lunch counter because of the fact that they were colored. No question is presented by the record in this case as to the right of the defendants, if any such right exists, to be served at the lunch counter of the drug store. The sole question is whether their acts could reasonably be said to constitute a disturbance or breach of the peace. No law has been called to our attention, nor was any law invoked in the trial court, respecting the segregation of whites and negroes at lunch counters operated by private business concerns. So far as this court knows, there is no such law in the statute books, and the question of whether or not the proprietor of a particular business concern desires to cater to whites or negroes or to both races, is left entirely within the discretion of such proprietor, insofar as the statute books of this State are concerned. However, the trial court, as it was authorized to do, undoubtedly took judicial cognizance of the fact that it was then, and has been for many decades, the custom, not only in Savannah, Georgia, but in all places in Georgia, and for that matter, in the southeastern part of the United States, not to serve white people and negroes at the same lunch counters; that the vast majority of the white people in these areas, whether rightfully

or wrongfully, possess strong feelings with regard to this custom and are in favor of its continuance; that such feelings are so strong among the white people of the section that attempts to break down this custom have more frequently than not, been met with violent and forcible resistance on the part of the white people. These facts are so universally known that the court was authorized to take judicial notice of them (31 C. J. S. 574, Evidence, § 30), and the defendants were bound to know that their acts might result in violent opposition by the white people of the local community. These are facts which the officer in making the arrest undoubtedly took into consideration. In the exercise of the police power of the municipality, the police officer had not only the right but the duty and obligation to take such steps as would insure that the defendants' actions did not result in any demonstration of violence either by white people or by negroes. The evidence shows that the police officer quietly and courteously requested the defendants to leave the premises; that they refused to do so and that only after their refusal to leave the premises were they placed under arrest. This court cannot say, in view of these facts, that the conviction of the defendants under the provisions of the Code section quoted was unauthorized.

*Judgment affirmed. Townsend, P. J., Frankum and Jordan, JJ., concur.*