# GOODING, WARDEN *v.* WILSON

No. 70–26.  Argued December 8, 1971—Decided March 23, 1972

BRENNAN, J., delivered the opinion of the Court, in which DOUGLAS, STEWART, WHITE, and MARSHALL, JJ., joined. BURGER, C. J., filed a dissenting opinion, *post,* p. 528. BLACKMUN, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post,* p. 534. POWELL and REHNQUIST, JJ., took no part in the consideration or decision of the case.

*Courtney Wilder Stanton,* Assistant Attorney General of Georgia, argued the cause for appellant. With him on the brief were *Arthur K. Bolton,* Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, *Dorothy T. Beasley,* Assistant Attorney General, and *Franklin Pierce.*

*Elizabeth R. Rindskopf* argued the cause for appellee. On the brief were *Howard Moore, Jr.,* and *Peter E. Rindskopf.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Appellee was convicted in Superior Court, Fulton County, Georgia, on two counts of using opprobrious words and abusive language in violation of Georgia Code

Ann. § 26–6303, which provides: "Any person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor." Appellee appealed the conviction to the Supreme Court of Georgia on the ground, among others, that the statute violated the First and Fourteenth Amendments because vague and overbroad. The Georgia Supreme Court rejected that contention and sustained the conviction. *Wilson* v. *State,* 223 Ga. 531, 156 S. E. 2d 446 (1967). Appellee then sought federal habeas corpus relief in the District Court for the Northern District of Georgia. The District Court found that, because appellee had failed to exhaust his available state remedies as to the other grounds he relied upon in attacking his conviction, only the contention that § 26–6303 was facially unconstitutional was ripe for decision.[1] 303 F. Supp. 952 (1969). On the merits

---

[1] The District Court stated, "Accordingly, this order will not deal with the alleged unconstitutional application of this statute nor any of the other points raised in the writ, except for the facial unconstitutionality of Georgia Code § 26–6303." 303 F. Supp., at 953. The state conviction was upon two counts of assault and battery as well as upon two counts of using opprobrious and abusive language. Appellee was also convicted of federal offenses arising out of the same incident, and those convictions were affirmed by the Court of Appeals for the Fifth Circuit. *Tillman* v. *United States,* 406 F. 2d 930 (1969). The facts giving rise to the prosecutions are stated in the opinion of the Supreme Court of Georgia as follows:

"The defendant was one of a group of persons who, on August 18, 1966, picketed the building in which the 12th Corps Headquarters of the United States Army was located, carrying signs opposing the war in Viet Nam. When the inductees arrived at the building, these persons began to block the door so that the inductees could not enter. They were requested by police officers to move from the door, but refused to do so. The officers attempted to remove them from the door, and a scuffle ensued. There was ample evidence to show that the defendant committed assault and battery on the two police officers named in the indictment. There was also

of that question, the District Court, in disagreement with the Georgia Supreme Court, held that § 26–6303, on its face, was unconstitutionally vague and broad and set aside appellee's conviction. The Court of Appeals for the Fifth Circuit affirmed. 431 F. 2d 855 (1970). We noted probable jurisdiction of the State's appeal, 403 U. S. 930 (1971). We affirm.

Section 26–6303 punishes only spoken words. It can therefore withstand appellee's attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments, *Cohen* v. *California,* 403 U. S. 15, 18–22 (1971); *Terminiello* v. *Chicago,* 337 U. S. 1, 4–5 (1949). Only the Georgia courts can supply the requisite construction, since of course "we lack jurisdiction authoritatively to construe state legislation." *United States* v. *Thirty-seven Photographs,* 402 U. S. 363, 369 (1971). It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe

---

sufficient evidence of the use of the opprobrious and abusive words charged, and the jury was authorized to find from the circumstances shown by the evidence that the words were spoken without sufficient provocation, and tended to cause a breach of the peace." 223 Ga. 531, 535, 156 S. E. 2d 446, 449–450.

"Count 3 of the indictment alleged that the accused 'did without provocation use to and of M. G. Redding and in his presence, the following abusive language and opprobrious words, tending to cause a breach of the peace: "White son of a bitch, I'll kill you." "You son of a bitch, I'll choke you to death." ' Count 4 alleged that the defendant 'did without provocation use to and of T. L. Raborn, and in his presence, the following abusive language and opprobrious words, tending to cause a breach of the peace: "You son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces." ' " *Id.,* at 534, 156 S. E. 2d, at 449.

speech and when "no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution," *Dombrowski* v. *Pfister,* 380 U. S. 479, 491 (1965), the transcendent value to all society of constitutionally protected expression is deemed to justify allowing "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity," *id.,* at 486; see also *Baggett* v. *Bullitt,* 377 U. S. 360, 366 (1964); *Coates* v. *City of Cincinnati,* 402 U. S. 611, 616 (1971); *id.,* at 619–620 (WHITE, J., dissenting); *United States* v. *Raines,* 362 U. S. 17, 21–22 (1960); *NAACP* v. *Button,* 371 U. S. 415, 433 (1963). This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

> "Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." *Coates* v. *City of Cincinnati, supra,* at 619–620 (opinion of WHITE, J.) (citation omitted).

The constitutional guarantees of freedom of speech forbid the States to punish the use of words or

language not within "narrowly limited classes of speech." *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 571 (1942). Even as to such a class, however, because "the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn," *Speiser* v. *Randall,* 357 U. S. 513, 525 (1958), "[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom," *Cantwell* v. *Connecticut,* 310 U. S. 296, 304 (1940). In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP* v. *Button, supra,* at 433.

Appellant does not challenge these principles but contends that the Georgia statute is narrowly drawn to apply only to a constitutionally unprotected class of words—"fighting" words—"those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky* v. *New Hampshire, supra,* at 572. In *Chaplinsky,* we sustained a conviction under Chapter 378, § 2, of the Public Laws of New Hampshire, which provided: "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name . . . ." Chaplinsky was convicted for addressing to another on a public sidewalk the words, "You are a God damned racketeer," and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists." Chaplinsky challenged the constitutionality of the statute as inhibiting freedom of expression because it was vague and indefinite. The Supreme Court of New Hampshire, however, "long be-

fore the words for which Chaplinsky was convicted," sharply limited the statutory language "offensive, derisive or annoying word" to "fighting" words:

"[N]o words were forbidden except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed. . . .

.    .    .    .    .

"The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . Derisive and annoying words can be taken as coming within the purview of the statute . . . only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. . . .

"The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee . . . ." 91 N. H. 310, 313, 320–321, 18 A. 2d 754, 758, 762 (1941).

In view of that authoritative construction, this Court held: "We are unable to say that the limited scope of the statute as thus construed contravenes the Constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace." 315 U. S., at 573. Our decisions since *Chaplinsky* have continued to recognize state power constitutionally to punish "fighting" words under carefully drawn statutes not also susceptible of application to protected expression, *Cohen* v. *California,* 403 U. S., at 20; *Bachellar* v. *Maryland,* 397 U. S. 564, 567 (1970); see *Street* v. *New York,* 394 U. S. 576, 592 (1969). We reaffirm that proposition today.

Appellant argues that the Georgia appellate courts have by construction limited the proscription of § 26–6303 to "fighting" words, as the New Hampshire Supreme Court limited the New Hampshire statute. "A consideration of the [Georgia] cases construing the elements of the offense makes it clear that the opprobrious words and abusive language which are thereby prohibited are those which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person, and in his presence, naturally tend to provoke violent resentment. The statute under attack simply states in statutory language what this Court has previously denominated 'fighting words.' " Brief for Appellant 6. Neither the District Court nor the Court of Appeals so read the Georgia decisions. On the contrary, the District Court expressly stated, "Thus, in the decisions brought to this Court's attention, no meaningful attempt has been made to limit or properly define these terms." 303 F. Supp., at 955. The District Judge and one member of the unanimous Court of Appeals panel were Georgia practitioners before they ascended the bench.[2] Their views of Georgia law necessarily are persuasive with us. C. Wright, Law of Federal Courts § 58, pp. 240–241 (2d ed. 1970). We have, however, made our own examination of the Georgia cases, both those cited and others discovered in research. That examination brings us to the conclusion, in agreement with the courts below, that the Georgia appellate decisions have not construed § 26–6303 to be limited in application, as in *Chaplinsky*, to words that "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed."

---

[2] Judge Sidney O. Smith, Jr., of Gainesville, Georgia, was the District Judge. Judge Lewis R. Morgan of Newnan, Georgia, a member of the Court of Appeals panel, sat as District Judge in Georgia before his appointment to the Court of Appeals.

The dictionary definitions of "opprobrious" and "abusive" give them greater reach than "fighting" words. Webster's Third New International Dictionary (1961) defined "opprobrious" as "conveying or intended to convey disgrace," and "abusive" as including "harsh insulting language." Georgia appellate decisions have construed § 26–6303 to apply to utterances that, although within these definitions, are not "fighting" words as *Chaplinsky* defines them. In *Lyons* v. *State,* 94 Ga. App. 570, 95 S. E. 2d 478 (1956), a conviction under the statute was sustained for awakening 10 women scout leaders on a camp-out by shouting, "Boys, this is where we are going to spend the night." "Get the G-- d--- bed rolls out . . . let's see how close we can come to the G-- d--- tents." Again, in *Fish* v. *State,* 124 Ga. 416, 52 S. E. 737 (1905), the Georgia Supreme Court held that a jury question was presented by the remark, "You swore a lie." Again, *Jackson* v. *State,* 14 Ga. App. 19, 80 S. E. 20 (1913), held that a jury question was presented by the words addressed to another, "God damn you, why don't you get out of the road?" Plainly, although "conveying . . . disgrace" or "harsh insulting language," these were not words "which by their very utterance . . . tend to incite an immediate breach of the peace." *Chaplinsky* v. *New Hampshire, supra,* at 572.

Georgia appellate decisions construing the reach of "tending to cause a breach of the peace" underscore that § 26–6303 is not limited, as appellant argues, to words that "naturally tend to provoke violent resentment." *Lyons* v. *State, supra; Fish* v. *State, supra;* and *Jackson* v. *State, supra.* Indeed, the Georgia Court of Appeals [3] in *Elmore* v. *State,* 15 Ga. App. 461, 83 S. E.

---

[3] We were informed in oral argument that the Court of Appeals of Georgia is a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of Georgia. Federal courts therefore

799 (1914), construed "tending to cause a breach of the peace" as mere

> "words of description, indicating the kind or character of opprobrious or abusive language that is penalized, and the use of language of this character is a violation of the statute, even though it be addressed to one who, on account of circumstances or by virtue of the obligations of office, can not actually then and there resent the same by a breach of the peace . . . .
>
> ". . . Suppose that one, at a safe distance and out of hearing of any other than the person to whom he spoke, addressed such language to one locked in a prison cell or on the opposite bank of an impassable torrent, and hence without power to respond immediately to such verbal insults by physical retaliation, could it be reasonably contended that, because no breach of the peace could then follow, the statute would not be violated? . . .
>
> ". . . [T]hough, on account of circumstances or obligations imposed by office, one may not be able at the time to assault and beat another on account of such language, it might still tend to cause a breach of the peace at some future time, when the person to whom it was addressed might be no longer hampered by physical inability, present conditions, or official position." 15 Ga. App., at 461–463, 83 S. E., at 799–800.[4]

follow these holdings as to Georgia law. *Fidelity Union Trust Co.* v. *Field,* 311 U. S. 169 (1940); *Bernhardt* v. *Polygraphic Co. of America,* 350 U. S. 198, 205 (1956).

[4] The dissents question reliance upon Georgia cases decided more than 50 years ago. But *Fish* v. *State,* 124 Ga. 416, 52 S. E. 737 (1905), and *Jackson* v. *State,* 14 Ga. App. 19, 80 S. E. 20 (1913), were cited by the Supreme Court of Georgia in 1967 in *Wilson* v. *State,* 223 Ga. 531, 156 S. E. 2d 446, to support that holding. Thus, *Fish* and *Jackson* remain authoritative interpretations of § 26–6303 by the State's highest court.

Moreover, in *Samuels* v. *State*, 103 Ga. App. 66, 67, 118 S. E. 2d 231, 232 (1961), the Court of Appeals, in applying another statute, adopted from a textbook the common-law definition of "breach of the peace."

"The term 'breach of the peace' is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community . . . . By 'peace,' as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members."

This definition makes it a "breach of peace" merely to speak words offensive to some who hear them, and so sweeps too broadly. *Street* v. *New York*, 394 U. S., at 592. "[H]ow infinitely more doubtful and uncertain are the boundaries of an offense including any 'diversion *tending* to a breach of the peace' . . . ." *Gregory* v. *Chicago*, 394 U. S. 111, 119 (1969) (Black, J., concurring) (emphasis supplied).

Accordingly, we agree with the District Court that our decisions in *Ashton* v. *Kentucky*, 384 U. S. 195 (1966), and *Cox* v. *Louisiana*, 379 U. S. 536 (1965), compel the conclusion that § 26–6303, as construed, does not define the standard of responsibility with requisite narrow specificity. In *Ashton* we held that "to make an offense of conduct which is 'calculated to create disturbances of the peace' leaves wide open the standard of responsibility." 384 U. S., at 200. In *Cox* v. *Louisiana* the statute struck down included as an element congregating with others "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby." As the District Court observed, "[a]s construed by the Georgia courts, especially in the instant case, the Georgia provision as to breach of the peace is even broader than the Louisiana statute." 303 F. Supp., at 956.

We conclude that "[t]he separation of legitimate from illegitimate speech calls for more sensitive tools than [Georgia] has supplied." *Speiser* v. *Randall,* 357 U. S., at 525. The most recent decision of the Georgia Supreme Court, *Wilson* v. *State, supra,* in rejecting appellee's attack on the constitutionality of § 26–6303, stated that the statute "conveys a definite meaning as to the conduct forbidden, measured by common understanding and practice." 223 Ga., at 533, 156 S. E. 2d, at 448. Because earlier appellate decisions applied § 26–6303 to utterances where there was no likelihood that the person addressed would make an immediate violent response, it is clear that the standard allowing juries to determine guilt "measured by common understanding and practice" does not limit the application of § 26–6303 to "fighting" words defined by *Chaplinsky.* Rather, that broad standard effectively "licenses the jury to create its own standard in each case." *Herndon* v. *Lowry,* 301 U. S. 242, 263 (1937). Accordingly, we agree with the conclusion of the District Court, "[t]he fault of the statute is that it leaves wide open the standard of responsibility, so that it is easily susceptible to improper application." 303 F. Supp., at 955–956. Unlike the construction of the New Hampshire statute by the New Hampshire Supreme Court, the Georgia appellate courts have not construed § 26–6303 "so as to avoid all constitutional difficulties." *United States* v. *Thirty-seven Photographs,* 402 U. S., at 369.

*Affirmed.*

Mr. Justice Powell and Mr. Justice Rehnquist took no part in the consideration or decision of this case.

Mr. Chief Justice Burger, dissenting.

I fully join in Mr. Justice Blackmun's dissent against the bizarre result reached by the Court. It is not merely odd, it is nothing less than remarkable that a court can

find a state statute void on its face, not because of its language—which is the traditional test—but because of the way courts of that State have applied the statute in a few isolated cases, decided as long ago as 1905 and generally long before this Court's decision in *Chaplinsky* v. *New Hampshire,* 315 U. S. 568 (1942). Even if all of those cases had been decided yesterday, they do nothing to demonstrate that the narrow language of the Georgia statute has any significant potential for sweeping application to suppress or deter important protected speech.

In part the Court's decision appears to stem from its assumption that a statute should be regarded in the same light as its most vague clause, without regard to any of its other language. Thus, since the statute contains the words "tending to cause a breach of the peace" the Court finds its result "compelled" by such decisions as *Ashton* v. *Kentucky,* 384 U. S. 195 (1966), and *Cox* v. *Louisiana,* 379 U. S. 536 (1965). The statute at bar, however, does not prohibit language "tending to cause a breach of the peace." Nor does it prohibit the use of "opprobrious words or abusive language" without more. Rather, it prohibits use "to or of another, and in his presence [of] opprobrious words or abusive language, tending to cause a breach of the peace." If words are to bear their common meaning, and are to be considered in context, rather than dissected with surgical precision using a semantic scalpel, this statute has little potential for application outside the realm of "fighting words" that this Court held beyond the protection of the First Amendment in *Chaplinsky.* Indeed, the language used by the *Chaplinsky* Court to describe words properly subject to regulation bears a striking resemblance to that of the Georgia statute, which was enacted many, many years before *Chaplinsky* was decided. See 315 U. S., at 573. And if the early Georgia cases cited by the majority establish any proposition, it is that the statute, as its language so clearly indicates, is aimed at

preventing precisely that type of personal, face-to-face, abusive and insulting language likely to provoke a violent retaliation—self-help, as we euphemistically call it—that the *Chaplinsky* case recognized could be validly prohibited. The facts of the case now before the Court demonstrate that the Georgia statute is serving that valid and entirely proper purpose. There is no persuasive reason to wipe the statute from the books, unless we want to encourage victims of such verbal assaults to seek their own private redress.

The Court apparently acknowledges that the conduct of the defendant in this case is not protected by the First Amendment, and does not contend that the Georgia statute is so ambiguous that he did not have fair notice that his conduct was prohibited. Nor does the Court deny that under normal principles of constitutional adjudication, appellee would not be permitted to attack his own conviction on the ground that the statute in question might in some hypothetical situation be unconstitutionally applied to the conduct of some party not before the Court. *United States* v. *Raines,* 362 U. S. 17, 21 (1960) (BRENNAN, J.). Instead, the Court relies on certain sweeping language contained in a few opinions for the proposition that, without regard to the nature of appellee's conduct, the statute in question must be invalidated on its face unless "it is not susceptible of application to speech, . . . that is protected by the First and Fourteenth Amendments."

Such an expansive statement of the technique of invalidating state statutes on their face because of their *substantial* overbreadth finds little in policy or the actual circumstances of the Court's past decisions to commend it. As the Court itself recognizes, if the First Amendment overbreadth doctrine serves any legitimate purpose, it is to allow the Court to invalidate statutes because their language demonstrates their potential for

sweeping improper applications posing a significant likelihood of deterring important First Amendment speech—not because of some insubstantial or imagined potential for occasional and isolated applications that go beyond constitutional bounds. Writing in a related context, Mr. Justice Black, only last Term, evidenced proper regard for normal principles of adjudication when he observed:

> "Procedures for testing the constitutionality of a statute 'on its face'. . . and for then enjoining all action to enforce the statute until the State can obtain court approval for a modified version, are fundamentally at odds with the function of the federal courts in our constitutional plan. The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision; a statute apparently governing a dispute cannot be applied by judges . . . when such an application of the statute would conflict with the Constitution. *Marbury* v. *Madison,* 1 Cranch 137 (1803). But this vital responsibility, broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them. . . . [T]he task of analyzing a proposed statute, pinpointing its deficiencies, and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary. . . ." *Younger* v. *Harris,* 401 U. S. 37, 52–53 (1971).

These observations were directed specifically to the practice of issuing federal court injunctions against state prosecutions, but the problem presented by this case is much the same.

Consistent with this properly restrained approach, the overbreadth decisions of this Court, including most of those relied on by the majority, have up to now invalidated state statutes on their face only when their potential for sweeping and improper application in important areas of First Amendment concern was far more apparent—both from the language of the statute and the subject matter of its coverage—than in this case. Indeed, in many of the Court's leading cases, the statute's improper sweep and deterrent potential were amply documented by the very facts of the case before the Court. *Cox* v. *Louisiana,* 379 U. S. 536 (1965), heavily relied on by the majority, for example, involved a "breach of the peace" conviction of a leader of black students on the basis of his participation in a peaceful demonstration protesting racial discrimination and a speech urging a "sit in" at segregated lunch counters. Although the Court held, in the alternative, that a statutory prohibition against congregating with others on a public sidewalk "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby" was unconstitutionally vague and overbroad, it is clear that its primary holding was that the statute had been unconstitutionally *applied* to appellant's conduct as revealed by the record before the Court. See 379 U. S., at 545–551. In contrast to today's opinion, which mentions the facts of the instant case only by way of passing in a footnote, the *Cox* opinion contained a careful recital and examination of the facts involved, and took care to observe that there was not in the record "any evidence . . . of 'fighting words.' See *Chaplinsky* v. *New Hampshire,* 315 U. S. 568," 379 U. S., at 551. It was clear, therefore, that in *Cox* not only the language of the statute, but the facts of the very case before the Court, involving as it did protected political speech concerning a burning issue of great social concern, were cogent and persuasive evidence of the

statute's potential for sweeping and improper applications. By way of contrast, there is nothing in the language of the Georgia statute, or even in the isolated and ancient Georgia decisions relied on by the Court today that indicates that the statute involved in this case has ever been applied to suppress speech even remotely comparable to that involved in *Cox.*

There is no need to consider each of the other decisions relied on by the majority to reach its result in detail. Suffice it to say that such cases as *Ashton* v. *Kentucky,* 384 U. S. 195 (1966); *Baggett* v. *Bullitt,* 377 U. S. 360 (1964); *NAACP* v. *Button,* 371 U. S. 415 (1963), and *Dombrowski* v. *Pfister,* 380 U. S. 479 (1965), arose out of factual situations and involved statutory language and objectives so far different from the instant case in terms of the actual and apparent danger to free expression that their relevance to the case at hand is at best strained and remote.*

---

*Even assuming that the statute, on its face, were impermissibly overbroad, the Court does not satisfactorily explain why it must be invalidated in its entirety. To be sure, the Court notes that "we lack jurisdiction authoritatively to construe state legislation." But that cryptic statement hardly resolves the matter. The State of Georgia argues that the statute applies only to fighting words that *Chaplinsky* holds may be prohibited, and the Court apparently agrees that the statute would be valid if so limited. The Court should not assume that the Georgia courts, and Georgia prosecutors and police, would ignore a decision of this Court sustaining appellee's conviction narrowly and on the explicit premise that the statute may be validly applied only to "fighting words" as defined in *Chaplinsky.* See generally Note, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. 844, 892, 894–896, and nn. 189, 190 (1970). Where such a clear line defining the area of constitutional application is available, the fact that the Court cannot authoritatively construe the state statute to excise its unconstitutional applications should make us more, not less, reluctant to strike it down on its face. This is especially so when the Court, by relying on old Georgia cases to bolster its conclusion, virtually concedes that the plain language does not offend the First Amendment.

The Court makes a mechanical and, I suggest, insensitive application of the overbreadth doctrine today. As MR. JUSTICE BLACKMUN correctly points out, it is difficult to imagine how a State could enact a statute more clearly and narrowly aimed at regulating the type of conduct that the unanimous holding of *Chaplinsky* tells us may be regulated. It is regrettable that one consequence of this holding may be to mislead some citizens to believe that fighting words of this kind may be uttered free of any legal sanctions.

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE joins, dissenting.

It seems strange, indeed, that in this day a man may say to a police officer, who is attempting to restore access to a public building, "White son of a bitch, I'll kill you" and "You son of a bitch, I'll choke you to death," and say to an accompanying officer, "You son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces," and yet constitutionally cannot be prosecuted and convicted under a state statute that makes it a misdemeanor to "use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . ." This, however, is precisely what the Court pronounces as the law today.

The Supreme Court of Georgia, when the conviction was appealed, unanimously held the other way. *Wilson* v. *State*, 223 Ga. 531, 156 S. E. 2d 446 (1967). Surely any adult who can read—and I do not exclude this appellee-defendant from that category—should reasonably expect no other conclusion. The words of Georgia Code § 26–6303 are clear. They are also concise. They are not, in my view, overbroad or incapable of being understood. Except perhaps for the "big" word "opprobrious"—and no point is made of its bigness—any

Georgia schoolboy would expect that this defendant's fighting and provocative words to the officers were covered by § 26–6303. Common sense permits no other conclusion. This is demonstrated by the fact that the appellee, and this Court, attack the statute, not as it applies to the appellee, but as it conceivably might apply to others who might utter other words.

The Court reaches its result by saying that the Georgia statute has been interpreted by the State's courts so as to be applicable in practice to otherwise constitutionally protected speech. It follows, says the Court, that the statute is overbroad and therefore is facially unconstitutional and to be struck down in its entirety. Thus Georgia apparently is to be left with no valid statute on its books to meet Wilson's bullying tactic. This result, achieved by what is indeed a very strict construction, will be totally incomprehensible to the State of Georgia, to its courts, and to its citizens.

The Court would justify its conclusion by unearthing a 66-year-old decision, *Fish* v. *State,* 124 Ga. 416, 52 S. E. 737 (1905), of the Supreme Court of Georgia, and two intermediate appellate court cases over 55 years old, *Jackson* v. *State,* 14 Ga. App. 19, 80 S. E. 20 (1913), and *Elmore* v. *State,* 15 Ga. App. 461, 83 S. E. 799 (1914), broadly applying the statute in those less permissive days, and by additional reference to (a) a 1956 Georgia intermediate appellate court decision, *Lyons* v. *State,* 94 Ga. App. 570, 95 S. E. 2d 478, which, were it the first and only Georgia case, would surely not support today's decision, and (b) another intermediate appellate court decision, *Samuels* v. *State,* 103 Ga. App. 66, 118 S. E. 2d 231 (1961), relating, not to § 26–6303, but to another statute.

This Court appears to have developed its overbreadth rationale in the years since these early Georgia cases. The State's statute, therefore, is condemned because the

State's courts have not had an opportunity to adjust to this Court's modern theories of overbreadth.

I wonder, now that § 26–6303 is voided, just what Georgia can do if it seeks to proscribe what the Court says it still may constitutionally proscribe. The natural thing would be to enact a new statute reading just as § 26–6303 reads. But it, too, presumably would be over-broad unless the legislature would add words to the effect that it means only what this Court says it may mean and no more. See Criminal Code of Georgia § 26–2610 (1969).

I cannot join the Court in placing weight upon the fact that Judge Smith of the United States District Court had been a Georgia practitioner and that Judge Morgan of the Court of Appeals had also practiced in that State. After all, each of these Georgia federal judges is bound by this Court's self-imposed straitjacket of the overbreadth approach. Judge Smith's personal attitude is clear, for he said:

> "[T]his Court does not see any policy reasons for upholding the right of a person to use the type of language expressed by this petitioner. It strains the concept of freedom of speech out of proportion when it is argued that such language is and should be protected." 303 F. Supp. 952, 955 (ND Ga. 1969).

And the Court of Appeals joined in this comment when, on the point at issue here, it merely agreed "with the well reasoned opinion of the district court." 431 F. 2d 855, 859 (CA5 1970).

For me, *Chaplinsky* v. *New Hampshire*, 315 U. S. 568 (1942), was good law when it was decided and deserves to remain as good law now. A unanimous Court, including among its members Chief Justice Stone and Justices Black, Reed, DOUGLAS, and Murphy, obviously thought

it was good law. But I feel that by decisions such as this one and, indeed, *Cohen* v. *California,* 403 U. S. 15 (1971), the Court, despite its protestations to the contrary, is merely paying lip service to *Chaplinsky.* As the appellee states in a footnote to his brief, p. 14, "Although there is no doubt that the state can punish 'fighting words' this appears to be about all that is left of the decision in *Chaplinsky.*" If this is what the overbreadth doctrine means, and if this is what it produces, it urgently needs re-examination. The Court has painted itself into a corner from which it, and the States, can extricate themselves only with difficulty.