Argued June 27, reversed and remanded for trial
August 20, reconsideration denied October 11,
petition for review allowed December 11, 1979

STATE OF OREGON,
*Appellant,*
*v.*
MICHAEL DENNIS SPENCER,
*Respondent.*

(No. B47-427, CA 13453)

599 P2d 464

Ronald R. Sticka, Assistant District Attorney, Eugene, argued the cause for appellant. With him on the brief was J. Pat Horton, District Attorney, Eugene.

David J. Phillips, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for respndent.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

PER CURIAM

Reversed and remanded for trial. *State v. Donahue,* 39 Or App 79, 591 P2d 394 (1979).

ROBERTS, J., dissenting opinion.

[393]

**ROBERTS, J.,** dissenting.

I dissent because *State v. Donahue,* 39 Or App 79, 591 P2d 394 (1979) is not controlling as to all of the questions raised by this case and because I would affirm on the merits. We are presented with the state's appeal from a successful constitutional challenge to the following portion of ORS 166.025:

"(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"* * * * *

"(c) Uses abusive or obscene language, or makes an obscene gesture, in a public place; * * *

"* * * * *."

Defendant, by demurrer, challenged the *mens rea* language above as void for vagueness and the terms "abusive" and "obscene," (1)(c), as vague, overbroad and violative of the First Amendment's guarantee of freedom of speech because they cover protected as well as unprotected speech.

In *Donahue* we responded to a vagueness attack upon the *mens rea* language of the statute, holding that the language, when read together with parts (a) and (c) of the statute, was sufficiently specific to withstand the vagueness challenge. *Donahue,* therefore, controls the defendant's challenge to the intent part of the statute. It does not, however, speak to the constitutional sufficiency of the words "abusive" or "obscene." Nor does it answer the First Amendment challenge raised by defendants.

In *Gooding v. Wilson,* 405 US 518, 92 S Ct 1103, 31 L Ed 2d 408 (1972), the United States Supreme Court held that where a statute is attacked as overly broad and violative of First Amendment freedom of expression,

"* * * It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. * * * [T]he

[395]

transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " 405 US at 520-21.

*Gooding* clearly expresses defendant's right to challenge the statute on its face. I, therefore, respectfully submit that this is not a proper case for Per Curiam reversal.

Further, I would find that the lower court correctly sustained defendant's demurrer. In *Gooding,* the United States Supreme Court found the following statute unconstitutionally vague and overbroad.

"'Any person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor. * * *'" 405 US at 519.

The court noted that speech is protected unless it falls into one of several narrowly drawn categories of unprotected speech and rejected appellant's contention that the statute was narrowly enough drawn to apply only to the constitutionally unprotected class of words called "fighting words," *i.e.,* "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

The court held that "opprobrious" and "abusive" are words which by their definitions cover speech which does not amount to "fighting words." The court noted that it had in the past upheld a New Hampshire statute of similarly vague phrasing (*Chaplinsky v. New Hampshire,* 315 US 568, 62 S Ct 766, 86 L Ed 1031 (1942)) but only because that state's court had consistently limited application of the statute to speech which would qualify as fighting words. Since the Georgia court had applied its statute to all manner of speech, including some clearly not amounting to fighting words, the United States Supreme Court held

that the statute had not been saved by a narrowing construction and held it unconstitutional. I believe that under *Gooding,* the word "abusive" in our statute is overbroad and unconstitutional.

I would also hold the word "obscene," as used in this statute, to be unconstitutionally vague and overbroad. The state argues that "obscene" is not vague because it is defined by ORS 167.060(7) which provides:

> "(7) 'Obscenities' means those slang words currently generally rejected for regular use in mixed society, that are used to refer to genitals, female breasts, sexual conduct or excretory functions or products, either that have no other meaning or that in context are clearly used for their bodily, sexual or excretory meaning."

This definition, however, is for ORS 167.060 to 167.095, the statutes relating generally to obscene material, and is, therefore, not controlling as to the statute before us.

Even if we were to assume that the term "obscene language," without definition, is not unconstitutionally vague because it is commonly understood to mean the sort of language outlined in ORS 167.060(7), the phrase would still fail because it encompasses protected speech and is therefore overbroad.

Although obscenity is not protected speech, the word obscenity, in the context of the First Amendment, has a narrowly defined meaning as set forth in *Miller v. California,* 413 US 15, 93 S Ct 2607, 37 L Ed 2d 419 (1973).[1] Words of the sort we are presuming the

---

[1] In *Miller* the United States Supreme Court set forth the following test to determine whether communications were obscene and therefore unprotected.

"* * * (a) [W]hether 'the average person, applying contemporary community standards', would find that the work, taken as a whole, appeals to the prurient interest; * * * (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *." 413 US at 24.

legislature intended to cover will generally not fall under the *Miller* definition, *see Cohen v. California,* 403 US 15, 91 S Ct 1780, 29 L Ed 2d 284 (1971) (words "Fuck the draft" held not to present an obscenity question), and will be protected unless they fall within another category of unprotected speech, most probably "fighting words." *See Chaplinsky v. New Hampshire, supra.* [2]

[2] The case of *FCC v. Pacifica Foundation,* 438 US 726, 98 S Ct 3026, 57 L Ed 2d 1073 (1978), suggests another possible rationale for curtailing speech of the sort presumably sought to be curtailed by the statute. *Pacifica* involved a ruling by the FCC that a certain radio station had violated a federal statute prohibiting the use of any "obscene, indecent, or profane language by means of radio communication" by playing a record on which a comedian repeatedly used a series of "filthy words" intending to satirize the general population's phobias as to these words. The court noted that the words were indecent, but not obscene, but found that under the circumstances the words were not constitutionally protected, saying

"* * * If there were any reason to believe that the Commission's characterization of the Carlin monologue as offensive could be traced to its political content — or even to the fact that it satirized contemporary attitudes about four letter words * * * — First Amendment protection might be required. But that is simply not this case. These words offend for the same reasons that obscenity offends. * * * Their place in the hierarchy of First Amendment values was aptly sketched by Mr. Justice Murphy when he said "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. *Chaplinsky v. New Hampshire,* 315 US 568, 572, 86 L Ed 1031, 62 S Ct 766.

"Although these words ordinarily lack literary, political, or scientific value, they are not entirely outside the protection of the First Amendment. Some uses of even the most offensive words are unquestionably protected. *See, e.g., Hess v. Indiana,* 414 US 105, 38 L Ed 2d 303, 94 S Ct 326. Indeed, we may assume, arguendo, that this monologue would be protected in other contexts. Nonetheless, the constitutional protection accorded to a communication containing such patently offensive sexual and excretory language need not be the same in every context. * * * It is a characteristic of speech such as this that both its capacity to offend and its 'social value,' to use Mr. Justice Murphy's term, vary with the circumstances. Words that are commonplace in one setting are shocking in another. To paraphrase Mr. Justice Harlan, one occasion's lyric is another's vulgarity. *Cf. Cohen v. California,* 403 US 15, 25, 29 L Ed 2d 284, 91 S Ct 1780." [Footnotes omitted.] 438 US at 746-47, 57 L Ed 2d at 1091-92.

The court went on to emphasize that the broadcast media for a variety of reasons are afforded the least amount of First Amendment protection

Because the terms "abusive language" and "obscene language" are neither defined nor limited to unprotected speech, I would hold ORS 166.025(1) unconstitutionally vague and overbroad and I, therefore, respectfully dissent.

---

and that the broadcast was in the daytime when children might be listening. Despite the pointedly narrow holding, this opinion is authority for the proposition that in certain contexts, speech can be so devoid of content that its communicative value is outweighed by societal interest in public "morals" or arguably in this case by public interest in order.

However, assuming that *FCC v. Pacifica Foundation* provides a rationale for the sort of regulation attempted by the disorderly conduct statute, the statute is not narrowly enough drawn to guarantee that only that speech devoid of communicative value would be covered.