**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry Gene EIRVEN, Defendant–**
**Appellant.**

**No. 90–50502.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1992.

Decided March 8, 1993.

Carolyn Chapman, San Diego, CA, for defendant-appellant.

Mary A. Schneider, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.

KOZINSKI, Circuit Judge:

## I

Larry Eirven appeals from a sentence for armed robbery. To save trees and our readers' patience, we dispose of most of Eirven's claims in an unpublished memorandum. In this opinion, we address only his obstruction of justice argument.

Eirven had a long criminal record even before he committed this robbery. He also had a serious drug problem, which his lawyer says made it hard for him to remember things, including some of his past criminal convictions (which led to relatively short sentences). When Eirven's Presentence Report suggested a criminal history category of VI, Eirven's lawyer filed an objection that said, in part:

> Mr. Eirven objects to the use of [four past criminal convictions].... It is believed that all of these crimes were committed by someone else using Mr. Eirven's identity card.

Objections to Presentence Report at 2. The probation officer reviewed records of the four convictions and decided to exclude one of them because the signature on a document in that case "[did] not appear to be [Eirven's]." Addendum to the Presentence Report at 2.

However, because the probation officer found Eirven had indeed been the defendant in the other three cases, she concluded Eirven was "purposefully attempting to mislead the Court by denying that he was arrested and convicted" in those cases. *Id.* at 3. She therefore recommended that the court apply the U.S.S.G. § 3C1.1 enhancement for "willfully ... attempt[ing] to ... obstruct ... the administration of justice." The district court agreed, finding Eirven willfully induced his lawyer to file the objection. RT 7/30/90 at 18, 22. The net effect of this was that Eirven's sentence was lengthened by 20 months because of the obstruction of justice enhancement; adding insult to injury, the removal of the one conviction turned out to have no effect on the sentence.

## II

A. To begin with, we disagree with the district court's factual analysis. Because the objection said "it is believed that ...," the court concluded the objection was Eirven's idea and meant by Eirven to be a factual representation. Had the objection said "it's counsel's contention that ...," the court would seemingly have been prepared to accept the objection as the lawyer's idea and as a mere legal argument. RT 7/30/90 at 18–19.

But what does the objection's wording reveal about what Eirven actually told the lawyer? Eirven's instructions could well have been perfectly legitimate: He might have, for instance, said "I'm not sure whether I committed these offenses, so see if you can have them checked" or "I don't think they can prove I committed these offenses, so demand some proof."

Likewise, it's possible the lawyer wrote "Mr. Eirven objects ..." and "[i]t is believed ..." because Eirven said that he didn't commit any of the four offenses. But it's also possible that the lawyer habitually drafts his motions in his client's name,[1] and that the lawyer said "it is believed" because he thought it sounded bet-

---

1. *See, e.g., Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972) ("[a]ppellant does not challenge these principles but contends that ..."—doubtless it was his lawyer who was actually contending it); *United States v. Fine,* 975 F.2d 596, 600 (9th Cir.1992) (en banc) (speaking of the "argument raised by Fine," though it was raised by his lawyer).

ter than "it may be the case."[2] Eirven might have known the lawyer would phrase the motion in a way that might seem dishonest, but he might also have thought the lawyer would scrupulously avoid any false inferences. There may also have been some miscommunication between client and lawyer—a not unheard-of event.

Perhaps the lawyer here was, as the district judge said, a mere "conduit," a mere "typist for [his] client." RT 7/30/90 at 18. But this is sheer conjecture, unsupported by any facts. A defendant's sentence may only be enhanced if the underlying conduct has been proven by a preponderance of the evidence. *United States v. Howard*, 894 F.2d 1085, 1089 (9th Cir.1990). We believe the district court clearly erred in finding this standard had been satisfied. *See Scott v. Henrich*, 978 F.2d 481, 485 (9th Cir.1992) (where fact needs to be proven by preponderance of evidence, mere scintilla of evidence from which factfinder can speculate isn't sufficient).

B. Having determined the district court clearly erred, we would normally remand for further factfinding. But in this case we doubt any evidence can be found that will show anything about what Eirven told his lawyer, because these conversations are almost certainly protected by the attorney-client privilege. *See* Fed.R.Evid. 1101(c); *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *United States v. Zolin*, 491 U.S. 554, 570–72, 109 S.Ct. 2619, 2630–31, 105 L.Ed.2d 469 (1989) (crime/fraud exception doesn't apply unless threshold showing of applicability is made); RT 7/30/90 at 4.

Moreover, we can't imagine the Sentencing Commission meant to punish defendants for things they say to their lawyers when discussing legal strategy. The whole point of the attorney-client privilege is to encourage defendants to speak freely to their lawyers. *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. at 682. A defendant is supposed to feel free to explore all possible options with his attorney. If one of the options is improper, it's the job of the attorney, who knows much more about the often Byzantine rules of our criminal justice system than the defendant, to dissuade the defendant from taking it. A defendant who knows that saying something impermissible to his lawyer can mean extra years in prison—and who knows how little he knows about what exactly is permissible—may well become afraid to say anything, and may therefore not take full advantage of his Sixth Amendment right to effective legal assistance.

We doubt the Sentencing Commission meant to so radically intrude on the lawyer-client relationship, and so seriously chill lawyer-client communications and effective defense advocacy. In fact, we doubt it could have even if it wanted to. *See Hampton v. Mow Sun Wong*, 426 U.S. 88, 114–17, 96 S.Ct. 1895, 1910–12, 48 L.Ed.2d 495 (1976) (where constitutional rights are involved, agency actions that fall outside the agency's normal area of responsibility are scrutinized particularly closely). We therefore conclude "obstruction of justice" in U.S.S.G. § 3C1.1 cannot apply to a case such as this.

SENTENCE VACATED and REMANDED FOR RESENTENCING.

---

**2.** Rightly or wrongly, lawyers often put forward their litigation positions in ways that sound like statements of fact. *See, e.g., United States v. Lacayo*, 758 F.2d 1559, 1564–65 (11th Cir.) (not improper for prosecutor to tell jury "[w]hat you are about to hear is a true story," though he should have made clear this was only government's theory), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991) (prosecutor told jury, as if it were a fact, that defendant lied, but this should be interpreted only as argument that jury ought not believe defendant); *United States v. Tipton*, 964 F.2d 650, 655–56 (7th Cir.1992) (prosecutor told jury that defendant was guilty, but in context this was only an invitation to jury to draw that inference from the evidence).