483 S.W.2d 271 (1972)
FARAH MANUFACTURING CO., Inc., Appellant,
v.
AMALGAMATED CLOTHING WORKERS OF AMERICA, SOUTHWEST REGIONAL JOINT BOARD et al., Appellees.
No. 15122.
Court of Civil Appeals of Texas, San Antonio.
July 5, 1972.
Kenneth R. Carr, El Paso, Fulbright, Crooker & Jaworski, Houston, for appellant.
Baskin, Casseb, Gilliland, Rodgers & Robertson, McGown, McClanahan & Hamner, San Antonio, amicus curiae.
Herrera, Rocha & Segura, Inc., Phillip D. Hardberger, San Antonio, for appellees.
*272 CADENA, Justice.
This is an appeal by Farah Manufacturing Company, plaintiff below, from the order of a district court of Bexar County dissolving a temporary restraining order which had been previously issued, denying plaintiff's application for an injunction, dismissing plaintiff's suit.
The case arises out of a labor dispute. The defendants are Amalgamated Clothing Workers of America, Southwest Regional Joint Board, an unincorporated labor organization, which will be referred to in this opinion as "Union"; Jose M. Perales, alleged to be an organizer for Union; and Robert I. Montez and Juanita R. Naranjo, whose connection with Union is not disclosed by the pleadings, but who are alleged to have engaged in conduct supporting Union in the labor dispute.
Plaintiff, a Texas corporation with its principal office in El Paso, owns and operates three manufacturing plants in San Antonio.
Plaintiff's allegations may be summarized as follows:
(1) Since May 4, 1972, Union has maintained a picket line at plaintiff's facilities in San Antonio.
(2) Union, "singly and in concert" with the three individual defendants and others, has, by the use of violence, threats of violence, property damage, and illegal picketing, hindered plaintiff's employees and person wishing to do business with plaintiff ". . . in the exercise of their lawful rights to work ... and from freely and without fear entering or leaving. . ." plaintiff's premises.
(3) The illegal picketing complained of consists of "mass picketing" in the sense that Union has maintained more than two pickets at various entrances to plaintiff's plants, and has stationed ". . . more than two pickets within fifty (50) feet of any other picket or pickets."
(4) The pickets, by the ". . . use of insulting, threatening and/or obscene language, . . ." have "repeatedly and continually" interfered with and "obstructed" plaintiff's employees and others in the exercise of their lawful right to work or freely enter and leave plaintiff's premises. The petition does not set out the language which it describes as "insulting, threatening and/or obscene."
(5) On one occasion the picketing was accompanied by ". . . the public display or publication of oral and or [sic] written misrepresentations, . . ." known to Union to be false. The petition neither sets out verbatim nor summarizes the "misrepresentations."
(6) Since the picketing began, the pickets have thrown "large quantities" of rocks, fruits, eggs, tomatoes and other objects at plaintiff's premises and at plaintiff's employees as they left plaintiff's premises. Numerous employees have been struck by such objects.
(7) On one occasion, the pickets hit some of plaintiff's employees with picket signs as the employees left plaintiff's premises, and on another occasion, nine days later, defendant, Naranjo, struck plaintiff's employees with a picket sign.
(8) On one occasion defendant, Perales, said that he would use ". . . knives, guns, machine guns or whatever force is necessary to `get . . .'" plaintiff.
(9) On one occasion defendant, Montez, "damaged the property of several" employees of plaintiff and threatened the employees ". . . with further physical violence if they continued to exercise their lawful rights to work, . . . ."
(10) Unless restrained, defendants will continue the ". . . foregoing course of violence, threats, property damage and illegal picketing . . ." causing plaintiff irreparable injury for which it has no adequate remedy at law.
*273 Based on these allegations, plaintiff sought a temporary restraining order restraining defendants ". . . from engaging in any violence toward, or threatening with physical violence, . . ." plaintiff's employees; from ". . . stationing more than two pickets at any one time at any entrance to . . ." plaintiff's premises ". . . or within fifty (50) feet of any other picket or pickets;. . ." and from picketing ". . . where such picketing is accompanied by insulting, threatening or obscene language or by oral or written misrepresentations." Plaintiff further prayed that, after hearing, a temporary injunction issue and that, on final hearing, the injunction be made permanent.
On June 2, 1972, the date plaintiff's petition was filed, the trial court issued the temporary restraining order and ordered that a hearing be held on the application for temporary injunction on June 9. Defendants filed a motion to dissolve the temporary restraining order and to ". . dismiss the application for temporary and permanent injunction . . ." because exclusive jurisdiction over the subject matter of the suit is vested in the National Labor Relations Board, since the conduct complained of by plaintiff ". . . is either protected or proscribed . . ." by the Labor-Management Relations Act (29 U.S.C.A. Sec. 151 et seq.).
On June 9, the trial court announced it was ready to hear defendants' counsel ". . . on your motion." Counsel for defendants stated that he would like to present evidence showing that plaintiff's volume of business satisfied the jurisdictional standards of the NLRB. Defendants then called to the stand plaintiff's San Antonio plant manager and questioned him solely on matters concerning the nature and volume of plaintiff's business. Plaintiff did not cross-examine this witness and, after defendants' counsel declared that he had no further testimony to offer, the court asked for written briefs on the question of the court's jurisdiction and recessed until June 12. On June 12 the court declared that it was granting defendants' ". . . motion to dismiss for want of jurisdiction, and that terminates the case at this time."
On June 14 the court entered an order dissolving the temporary restraining order and denying the application for temporary injunction. In addition, this order recited that defendants' motion to dismiss for want of jurisdiction was ". . . granted in all things, with cost of Court being taxed against Plaintiff for which let execution issue if not timely paid."
It is clear that the trial court, believing it lacked jurisdiction of the subject matter of the litigation, dismissed the entire case, and not merely the application for temporary injunction. A reading of defendants' motion and of the order granting such motion "in all things" compels this conclusion.
Plaintiff concedes that the nature and volume of its business are such as to meet the jurisdictional requirements of the NLRB. Defendants recognize that, despite the "pre-emption" of the field of labor relations by the Federal government, the states still retain the power to deal with damage to property, violence, and threats of violence, even if such conduct occurs in connection with a labor dispute and attendant picketing. Plaintiff's petition does not seek to enjoin all picketing activities, but merely seeks judicial intervention to prevent property damage, violence, threats of violence, mass picketing, insulting, abusive and obscene language, and misrepresentation. Plaintiff concedes that the factual situation involved is not such as to bring this case within the rule announced in Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), where it was held that all picketing can be constitutionally enjoined if it is so enmeshed with acts of violence that ". . . it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be *274 wholly peaceful." 312 U.S. at 294, 61 S. Ct. at 555.
Since the policing of conduct which consists of actual or threatened violence to person or property is left to the states, even though such conduct arises out of a labor dispute which, as to other features, would be within the exclusive jurisdiction of the NLRB, and in view of the fact that plaintiff's prayer for injunctive relief seeks a prohibition only of actual or threatened violence and recognizes that interdiction of all picketing would not be warranted by the pleadings, an injunction reaching only the violent aspects of defendants' course of conduct would not encroach upon that area of regulation of labor disputes which has been pre-empted by the national government. San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The trial court, therefore, had jurisdiction to hear and determine this aspect of the case.
Plaintiff alleged that defendants had knowingly made false representations. In Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 55, 86 S. Ct. 657, 659, 15 L.Ed.2d 582 (1966), the Supreme Court held that where a party to a labor dispute circulates false and defamatory statements, a court has jurisdiction to apply state remedies ". . . if the complainant pleads and proves that the statements were made with malice and injured him." It is true that the Linn holding was made in the context of a suit for damages, but the basis for the holding is manifestly the conclusion of the Court that the NLRB does not have exclusive jurisdiction to deal with questions concerning defamation.
"Nor should the fact that defamation arises during a labor dispute give the Board exclusive jurisdiction to remedy its consequences. The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. While the Board might find that an employer or union violated § 8 by deliberately making false statements, ... it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputationwhether he be on employer or union officialhas no relevance to the Board's function.... The Board can award no damages, impose no penalty, or give any other relief to the damaged individual.... The Board's lack of concern with the `personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption." 383 U.S. at 63-64, 86 S.Ct. at 663.
The Linn opinion makes clear that in using the term "malicious" in defining the type of defamation which is left to state control it is applying the standards enunciated in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). That is, "malicious defamation" refers to ". . . defamatory statements published with knowledge of their falsity or with reckless disregard of whether they were true or false. . . ." 383 U.S. at 65, 86 S.Ct. at 664.
Since plaintiff alleges, albeit in general terms, that defendants have been guilty of malicious defamation, a state court has the power to deal with such conduct. It is true that difficult constitutional questions may arise in a suit involving defamation and the power of a court to enjoin it, but those questions are irrelevant to the disposition of a plea to the jurisdiction. The determination of whether the defamatory statements may be constitutionally suppressed must await the introduction of evidence. But, in view of the Linn holding, the power of a state court to hear and determine such constitutional issues as may arise is not divested by the Labor-Management Relations Act.
We believe that the Linn rationale is also applicable to plaintiff's prayer that the use of insulting and obscene language be enjoined. The Board's concern with such *275 would be limited to that examination which would be required in order to determine the coercive nature of such statements. Whether the use of such language created a reasonable apprehension of a breach of the peace or other unlawful conduct which is not beyond the reach of the state's police power has no relevance to the Board's function.
Again, in view of decisions such as Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), and Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), difficult constitutional questions may face the trial court when it attempts to determine whether the language falls into the category of "fighting words" which a state may constitutionally suppress. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). But, again, there is nothing in the federal labor legislation which deprives the state courts of the power to make that determination.
Nor do we feel it necessary, given the posture of the case before us, to consider the validity of the Texas "mass picketing" statute, Vernon's Tex.Rev.Civ. Stats.Ann., Article 5154d, Sec. 1, Par. 1 The NLRB itself has consistently recognized that the Labor-Management Relations Act does not contemplate that the Board shall affirmatively regulate the number of pickets, and this is primarily a matter for local authorities. The function of the Board is limited to determining whether picketing as conducted in a given situation "restrains" or "coerces" employees. Cory Corp., 84 N.L.R.B. 972, 24 L.R.R.M. 1326 (1949). Under the Linn rationale, then, the state's power to regulate the number of pickets has not been pre-empted. Again, the question of whether the Texas statute is invalid because of "overbreadth" or because of any "chilling effect" it may have on the exercise of First Amendment rights is a question which state courts may determine in the exercise of their jurisdiction which has not been pre-empted.
The judgment of the trial court is reversed and the cause is remanded for reinstatement on the docket and trial on the merits.