PD-0293-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/18/2015 3:22:53 PM
Accepted 3/19/2015 9:41:12 AM
ABEL ACOSTA
CLERK

CASE NO. _____

In the Court of Criminal Appeals
Austin, Texas

KAREN LADELL ADAMS

FILED IN
COURT OF CRIMINAL APPEALS

March 19, 2015

ABEL ACOSTA, CLERK

Petitioner

V.

STATE OF TEXAS

Respondent

Appealed from the Second Court of Appeals
Fort Worth, Texas

Court of Appeals Cause No. 02-13-00184-CR

---

## PETITION FOR DISCRETIONARY REVIEW

---

Michael W. Minton
State Bar No. 14194550

THE LAW OFFICES OF
MICHAEL W. MINTON, P.L.L.C.
6100 Western Place, Suite W0541
Fort Worth, Texas 76107
mminton@mintonlaw.com
Telephone: 817-377-9200
Facsimile:  817-377-9201

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF THE PARTIES AND COUNSEL

| Petitioner | Petitioner Counsel |
|---|---|
| **Karen Adams** | MICHAEL W. MINTON State Bar No. 14194550 |

The Law Offices of
Michael W. Minton, PLLC
6100 Western Place, Suite W0541
Fort Worth, Texas 76107
Telephone: 817-377-9200
Facsimile:  817-377-9201

**Trial Counsel**

RICHARD MITCHELL
State Bar No. 24047319

Law Offices of Richard Mitchell
211 S. Rusk Street
Weatherford, Texas 76086
Telephone: 817-594-1088
Facsimile: 817-585-4778

| Respondent | Respondent and Trial Counsel |
|---|---|
| **The State of Texas** | ROB CHRISTIAN State Bar No. 00798106 |

Hood County District Attorney
1200 W. Pearl Street
Granbury, Texas 76048
Telephone: 817-579-3245
Facsimile:  817-579-3247

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL i

TABLE OF CONTENTS ii

TABLE OF AUTHORITIES iii

STATEMENT REGARDING ORAL ARGUMENT 2

STATEMENT OF THE CASE 2

STATEMENT OF PROCEDURAL HISTORY 2

GROUNDS FOR REVIEW 3

ARGUMENT 3

    I.    Legal sufficiency standard of review for retaliation by threat 3

    II.    Under the Jackson standard, the evidence is insufficient to support Adams' three convictions 4

        A.    Statement regarding Deputy East 5

        B.    Statement regarding Judge Walton 6

        C.    Statement regarding Roger Deeds 7

        D.    Discussion 7

CONCLUSION AND PRAYER 10

CERTIFICATE OF SERVICE 11

CERTIFICATE OF COMPLIANCE 11

APPENDIX

# TABLE OF AUTHORITIES

**CASE**                                                                     **PAGE**

*Brooks v. State,*
    323 S.W.3d 893 (Tex. Crim. App. 2010) — 4

*Gooding v. Wilson,*
    405 U.S. 518 (1972) — 10

*Hooper v. State,*
    214 S.W.3d 9 (Tex. Crim. App. 2007) — 7

*Jackson v. Virginia,*
    444 U.S. 890 (1979) — 3

*Lindsey v. State,*
    2011 WL 2739454 (Tex. App. – Corpus Christi 2011, no pet.) — 9

*Malik v. State,*
    953 S.W.2d 234 (Tex. Crim. App. 1997) — 4

*Meyer v. State,*
    366 S.W. 728 (Tex. App. – Texarkana 2012, no pet.) — 5

*Puckett v. State,*
    801 S.W.2d 188(Tex. App. – Houston 14th Dist.]
    1990, pet. ref'd) — 4

*Rabb v. State,*
    434 S.W.3d 613 (Tex. Crim. App. 2014) — 7

*Rodriguez v. State,*
    ____ S.W.2d ____, WL 2808269, *4 (Tex. Crim. App. 2014) — 7

*Watts v. U.S.,*
    394 U.S. 705 (1969) — 10

*Wilkins v. State,*
    279 S.W.3d 701 (Tex. App. – Amarillo 2007, no pet.) — 8

*Winfrey v. State,*
  393 S.W.3d 763 (Tex. Crim. App. 2013)     7

**STATUTES**

Tex. Pen. Code § 36.06(a)(1)     4

Tex. R. App. P. 66.3(a)     9

CASE NO. _____

In the Court of Criminal Appeals
Austin, Texas

KAREN LADELL ADAMS

Petitioner

V.

STATE OF TEXAS

Respondent

Appealed from the Second Court of Appeals
Fort Worth, Texas

Court of Appeals Cause No. 02-13-00184-CR

---

## PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

NOW COMES Karen Ladell Adams, petitioner, who makes and files this petition for discretionary review, and in support thereof would respectfully show:

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument in this matter. This case specifically deals with the sufficiency of the evidence to support three convictions for retaliation by threat based on ambiguous statements, subjective impressions of the accusing witnesses, innuendo and speculation.

## STATEMENT OF THE CASE

Karen Adams was indicted for retaliation under TEX. PEN. CODE § 36.06 on October 10, 2012 for statements she allegedly made on August 7, 2012 with respect to Deputy Sheriff Jerry East, Judge Ralph Walton, Jr. and Sheriff Roger Deeds. The statements, made to neighbors, followed shortly after her son, Gordon Ray Lewis, was indicted for capital murder.[1] On February 14, 2013 she was found guilty of the charges and sentenced to six years confinement in the institutional division of the Texas Department of Criminal Justice.

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals issued its opinion and judgment affirming Adams' conviction on February 5, 2014. *Adams v. State*, cause number 02-13-00184-CR, 2015 WL 505143 (Tex. App. – Fort Worth, Feb. 5, 2015)(not

---

[1] Lewis is filing a petition for discretionary review of his own appealing his conviction for capital murder in Cause No. PD- 0173-15.

designated for publication).  No motion for rehearing was filed.  A motion

for extension of time to file her petition for discretionary review is being

filed contemporaneously with this petition.

## GROUNDS FOR REVIEW

**Karen Adams was convicted of retaliation by threat against Deputy Jerry East, Sheriff Roger Deeds and Judge Ralph Walton, Jr.  Two witnesses testified to three statements by Karen Adams regarding these individuals shortly after Adams learned of her son's indictment for capital murder:**

1. **Adams "would get all those mother-f------s[.]"**
2. **Adams knew where Judge Walton kept a gun in his chambers.**
3. **"If I [Adams] had a gun, I'd shoot the sheriff."**

**Given these statements as they appear in the record, was the evidence in this case legally sufficient to support the defendant's three convictions?**

## ARGUMENT

I. **Legal sufficiency standard of review for retaliation by threat.**

In determining whether the evidence at trial was sufficient to support

Adams' convictions, the only standard of review applicable is the one

articulated in *Jackson v. Virgina*[2] :  considering all of the evidence in a light

---

[2] 444 U.S. 890 (1979).

most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt?[3]

Sufficiency of the evidence is measured by the elements of the offense as defined by hypothetically correct jury charge.[4] The elements of the offense defined by a hypothetically correct jury charge in this case would be: a person intentionally or knowingly threatens to harm another; by an unlawful act; in retaliation for or on account of the service or status of another as a public servant.[5] Whether a statement is a threat is a question of law.[6]

## II. Under the *Jackson* standard, the evidence is insufficient to support Adams' three convictions.

This case involves three different statements from two witnesses against three public officials: Deputy Jerry East, Sheriff Roger Deeds and Judge Ralph H. Walton, Jr. The statements advanced by the state as threats in the trial record are that Adams would "get all those motherf----s"; Adams knew where Judge Walton kept a gun in his chambers; and that if

---

[3] *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010), *citing Jackson*, 443 U.S. at 319.

[4] *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[5] TEX. PEN. CODE § 36.06(a)(1).

[6] *Puckett v. State*, 801 S.W.2d 188, 193 (Tex. App. – Houston [14th Dist.] 1990, pet. ref'd) cert. denied, 502 U.S. 990 (1991).

she "had a gun [she'd] shoot the sheriff."  Examining the evidence in this case count by count, no rational trier of fact could have found Adams guilty beyond a reasonable doubt on each of the respective counts.

### A.    Statement regarding Deputy East.

At trial, Carmella Clark testified that Adams told her that Gordon Lewis, Adams' son, had been indicted for capital murder.  According to Clark, Adams stated that she "would get all those mother-f------s," referring to East, Deeds and Walton.[7]

The record establishes that Adams stated only that she wanted to "get" Jerry East.  Clark testified only to a subjective impression that Adams meant that she wanted to shoot him.[8]  The court of appeals brushed aside the ambivalence of this statement and found it could be considered a threat based on its context, relying on *Meyer v. State*.[9]

But part of evaluating context necessarily involves all of the circumstances surrounding the statement, including the person to whom the statements were made.  This is not a situation where Adams told East directly that she was going to get him, nor is this a situation where Clark,

---

[7] RR vol. 3, pp. 55-56; slip opinion at p. 2.

[8] Slip opinion, p. 6.

[9] 366 S.W.3d 728, 731 (Tex. App. – Texarkana 2012, no pet.).

the witness, overheard Adams making the threat to East or to someone who was reasonably sure to pass the statement on to East. Instead, the threat element is supplied by Clark's subjective impression of what she believed Adams meant. What Adams said—as opposed to what Clark subjectively believed she meant—does not rise to the level of prohibitive speech sufficient to support her conviction.

## B. Statement regarding Judge Walton.

The evidence of retaliation by threat against Judge Walton is as painfully thin as the evidence relating to Jerry East. Carmela Clark testified that one of the persons Adams said she would "get" was Judge Walton.

When asked how Adams was going to accomplish this Clark testified she told her that she knew where Judge Walton kept his gun.[10] The state never elicited any testimony from Clark about what Adams would do with the gun and once again left it to subjective impression, speculation or innuendo to substantiate this as a threat that Adams would use it on Walton.

---

[10] Slip opinion, p. 3.

## C. Statement regarding Roger Deeds.

Of the three statements attributed to Adams as a threat. The one that comes closest to the statutory mark is the statement attributed to her that "[i]f I had a gun, I'd shoot the sheriff."[11] This statement came from a single witness, Mary Tillison.

Adams never specifically mentioned Sheriff Roger Deeds by name or stated that the sheriff she was talking about was the sheriff of Hood County. The only thing tying the reference to Deeds was an assumption contained in a question by the state. Once again, the required elements were supplied by nothing more than the witness' speculative and subjective impressions.

## D. Discussion.

This Court has consistently held that jurors are prohibited from drawing conclusions based on speculation or mere theorizing about the possible meaning of the facts.[12]

That is precisely the situation presented here. The jury's conclusion that Adams' utterances were threats or were made because of the victims'

---

[11] Id.

[12] *Rabb v. State*, 434 S.W.3d 613, 317 (Tex. Crim. App. 2014); *Rodriguez v. State*, ____ S.W.2d ____, 2014 WL 2808269, *4 (Tex. Crim. App. 2014); *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W. 3d 9, 13 (Tex. Crim. App. 2007).

status may not be unreasonable, but it is still necessarily based on speculation fueled by subjective impressions or opinions of the listener.

Vague statements about "getting" someone, knowing where a person's firearm is kept or shooting a public official only identified by his title may under the circumstances be inappropriate, ill-considered or just downright dumb but they are not threats whose mere utterance is a felony resulting in imprisonment. And a conditional threat to shoot an unidentified public servant without proof that it is because of his service or status coupled with the subjective speculation of the listener regarding its meaning does not establish the required elements under TEX. PEN. CODE § 36.06(a)(1).

In *Wilkins v. State,*[13] the Amarillo Court of Appeals reversed Wilkins' probation revocation where the state sought to revoke claiming that Wilkins committed retaliation by threat when he was overheard at the courthouse telling someone over the phone multiple times that he wished the district judge who had barred him from the courtroom would die.[14] One judge concurred in the result but did not believe the statements constituted a threat. The other two panel members held that retaliation was a result oriented offense and it was the state's burden to prove Wilkins intended or

---

[13] 279 S.W.3d 701 (Tex. App.-Amarillo 2007, no pet.).

[14] 279 S.W.3d at 703.

was reasonably certain that his statements would be interpreted as expressions of an intent to harm a public servant in retaliation of the public duty performed.[15]

The Corpus Christi Court of Appeals expressly disagreed with the Amarillo court in *Lindsey v. State*.[16] After this Court vacated the judgment in that case and remanded it for further proceedings the court of appeals again affirmed the conviction and held that intent to inhibit the behavior of the target of the threat is not an element of the offense.[17] Thus *Wilkins* and *Lindsey* set up the requisite split of authority to warrant review under TEX. R. APP. P. 66.3(a).

In a case where word choice can make the difference between constitutionally protecting grumbling and a felony conviction, justice demands that the state be held strictly to its burden of proof. "The constitutional guarantees of freedom of speech forbid the states to punish the use of words or language not within narrowly limited classes of

---

[15] Id. at 704-705.

[16] 2011 WL 2739454 (Tex. App.-Corpus Christi 2011)(not designated for publication)(on remand after judgment vacated, 2011WL 1487079 (Tex. Crim. App. 2011).

[17] *Lindsey v. State*, 2011 WL 2739454 at *5 f.n. 4.

speech."[18] Moreover, "what is a threat must be distinguished from what is constitutionally protected speech."[19]

In this case, the Court should grant the petition for discretionary review to determine whether the evidence, consisting largely of subjective impressions and innuendo, sufficiently supports Karen Adams' conviction.

WHEREFORE, PREMISES CONSIDERED, Karen Ladell Adams prays that the Court grant her petition for discretionary review; allow full briefing on the issue; and reverse her judgment of conviction and render a judgment of acquittal in this cause. Petitioner prays for such other and further relief, both general and special, at law or equity, to which she may show herself to be justly entitled.

Respectfully submitted,

By: /s/*Michael W. Minton*
MICHAEL W. MINTON
State Bar No. 14194550

THE LAW OFFICES OF
MICHAEL W. MINTON, P.L.L.C.
6100 Western Place, Suite W0541
Fort Worth, Texas 76107
mminton@mintonlaw.com
Telephone: 817-377-9200
Facsimile: 817-377-9201

---

[18] *Gooding v. Wilson*, 405 U.S. 518, 521-522 (1972).

[19] *See Watts v. U.S.*, 394 U.S. 705, 707 (1969).

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2015, a true and correct copy of the above and foregoing document was sent U.S. certified mail, return receipt requested and/or facsimile transmittal to all counsel of record in the above-styled and numbered cause as well as the state prosecuting attorney.

/s/*Michael W. Minton*
MICHAEL W. MINTON

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with Tex. R. App. P. 9.4(i) that the above and foregoing document was prepared with Microsoft Word for a total of 1,916 words.

/s/*Michael W. Minton*
MICHAEL W. MINTON

CASE NO. _____

In the Court of Criminal Appeals
Austin, Texas

KAREN LADELL ADAMS

Petitioner

V.

STATE OF TEXAS

Respondent

Appealed from the Second Court of Appeals
Fort Worth, Texas

Court of Appeals Cause No. 02-13-00184-CR

---

# APPENDIX

---

APPENDIX 1:     Memorandum opinion in cause number 02-13-00184-CR



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00184-CR

KAREN LADELL ADAMS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR12292

----------

## MEMORANDUM OPINION[1]

----------

Appellant Karen Ladell Adams challenges the sufficiency of the evidence to support her conviction for three counts of retaliation by threat. We will affirm.

In August 2012, Adams called her friend and neighbor Carmela Clark and asked her to come over. Clark had known Adams for about fifteen years and had been to her house in Hood County on many occasions. Adams invited Clark

---

[1]*See* Tex. R. App. P. 47.4.

inside when she arrived, and they went to the living room and sat down. Agitated and upset-looking, Adams told Clark that she wanted Clark to hear from her that her son, Gordon Lewis, had been indicted for capital murder. Clark, who felt sorry for Adams, told her that if Lewis "was innocent, it would show when he came to trial" and that the indictment did not mean that Lewis was guilty.

Clark then asked Adams if she wanted Clark to say a prayer with her. Clark went to where Adams was sitting, grabbed her hands, and began to pray. When Clark prayed "that the guilty people would be found guilty and the innocent people would be able to go free," Adams, who seemed "a little more agitated, maybe angry," abruptly flung Clark's hands down, stood up, walked around the back of the love seat that she had been sitting in, and told Clark, "Well, they - - they'll never find it." After Adams told Clark that "they would need evidence" and that "they wouldn't be able to find it," Adams began talking about "getting the Judge, the . . . police captain, and . . . the sheriff."

Adams first mentioned Jerry East, the police captain. Adams said that "she wanted to get him," and Clark got the impression that Adams wanted "to shoot him." Adams explained that East had "been after Gordon, he's had it in for Gordon for a while."

Adams then said that she "would get all those motherf_ _ _ers." Clark asked Adams whom she was talking about, and Adams said "the Judge," "Jerry East," and "the sheriff." Regarding "the Judge," Adams confirmed that she was

2

talking about Ralph Walton, Jr., the judge for the 355th Judicial District Court of Hood County. Regarding how Adams intended to "get" Judge Walton, Adams explained that she had been a housekeeper at the courthouse, that she knew how to get through security, and that she knew where Judge Walton kept his gun. Clark tried to tell Adams that these people were just doing their jobs, but Adams seemed to get more agitated and angry and just talked about wanting to "get" them. Clark had the impression that Adams was serious about it.

Clark did not immediately report what Adams had said, but after thinking about the individuals that Adams had talked about "hurting" and the impact on their lives, their families, and the community, Clark called the police and reported her. Clark hoped that by calling the police, they "would be alerted to watch out . . . that they might be hurt."

Adams had another conversation at her house with Mary Tillison, a neighbor who stopped by to check on Adams after hearing that Lewis had been indicted. According to Tillison, Adams's eyes were gray and empty, and she said, "If I had a gun, I'd shoot the sheriff."[2] Adams made the comment in the context of talking about Lewis's arrest. When asked whether or not she thought Adams intended to carry out the threat, Tillison opined, "That day she looked like she could have." Tillison did not report Adams to the police—because she was afraid that doing so would jeopardize the safety of her family—but authorities

---

[2]Roger Deeds was the sheriff of Hood County at the time.

3

eventually contacted her and took her statement. Adams scared Tillison when Adams talked about shooting the sheriff.

A grand jury indicted Adams on one count of retaliation against Jerry East, one count of retaliation against Judge Walton, and one count of retaliation against Roger Deeds—all three "for or on account of the[ir] services or status . . . as . . . public servant[s]" and all three alleging the unlawful act of "verbally stating that [Adams] was going to cause bodily injury to" each. *See* Tex. Penal Code Ann. § 36.06(a)(1)(A) (West 2011). A jury convicted Adams of each count and assessed her punishment at six years' confinement for each count. The trial court sentenced her accordingly.

In a single issue, Adams argues that the evidence is legally insufficient to support her conviction on any of the three counts. Her principal argument is that instead of permissibly drawing reasonable inferences from the evidence, the jury improperly drew conclusions based on speculation.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

4

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

As relevant here, a person commits an offense if she intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of that person's service or status as a public servant. Tex. Penal Code Ann. § 36.06(a)(1)(A). Comments supporting retaliation may be evaluated in the context within which they were uttered, and retaliatory intent may be inferred from an accused's acts, words, or conduct. *Meyer v. State*, 366 S.W.3d 728, 731

5

(Tex. App.—Texarkana 2012, no pet.); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.).

Regarding East and the statement that Adams wanted to "get" him, Adams argues that "getting" someone "can mean a whole range of things, many, if not most of which are not illegal," and that it was merely Clark's "subjective impression" that Adams meant that she wanted to shoot East. Regarding Judge Walton and the statements that Adams would "get" him and that she knew where he kept his gun, Adams argues that the "State never elicited any testimony from Clark about what Adams would do with the gun and once again left it to subjective impression, speculation and innuendo to substantiate this as a threat that Adams would use it on Walton." Adams points out that according to one reference, there are sixteen different definitions of the word "get."

While there certainly are numerous definitions of the word "get," we attribute a particular meaning to the term based on the context in which it is used. To demonstrate, if the evidence was that Adams was working as a waitress at a restaurant and that Clark, East, and Judge Walton were patrons there, then it might be reasonable to conclude that if Adams told Clark that she was going to "get" East and Judge Walton, she meant that she was going to wait on them. But that is not the evidence in this case, nor is it the context. The specific context in which Adams uttered her relevant comments was as follows: Adams's son had just been indicted for capital murder; Adams asked Clark over to her house for

the specific purpose of telling Clark about her son's indictment for capital murder; Adams seemed agitated and upset; when Clark prayed "that the guilty people would be found guilty and the innocent people would be able to go free," Adams became even more agitated; Adams said that East "had it in" for her son and had been "after" him for a while; Clark got the impression that Adams wanted to shoot East; Adams referred to East and Judge Walton as "motherf_ _ _ers"; Adams specifically referenced a gun; Clark contacted the police so that they would be alerted to the potential that they "might be hurt"; and Tillison did not report Adams because she was afraid that Adams would come to her house and murder her family. Adams's arguments challenging the element that requires a threat to harm another by an unlawful act are thus flawed because they disregard not only the context in which the statements were made but also the permissible inferences that the jury could have drawn therefrom. When Adams's statements are evaluated in context—instead of in a vacuum, or against some other irrelevant facts, as Adams's arguments impliedly suggest—it becomes readily apparent that the jury could have reasonably inferred that Adams threatened to harm East and Judge Walton by causing them bodily injury.

Regarding Deeds and the statement, "If I had a gun, I'd shoot the sheriff," Adams argues that the State never elicited any testimony that the sheriff being referenced by Adams was Deeds. Adams's statement unambiguously identified the person whom she would shoot if she had a gun—the sheriff. There was

other evidence that the sheriff at the time was Deeds, and the jury could have reasonably inferred that Adams meant Deeds when she made her statement. Adams directs us to no authority requiring specificity at the level that she demands.

As to all three counts, Adams argues that there was no evidence that she made the statements on account of East's, Judge Walton's, and Deeds's service or status as a public servant. *See* Tex. Penal Code Ann. § 36.06(a)(1)(A). The jury could have reasonably inferred that Adams made the statements on account of their service or status as public servants because when she made the statements, her son had just been indicted and each of the three individuals that she identified occupied positions involving, in some capacity, criminal law enforcement. *See, e.g.*, *Howard v. State*, Nos. 13-12-00659-CR, 13-12-00660-CR, 2013 WL 3327019, at *2 (Tex. App.—Corpus Christi June 27, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court could fairly infer that appellant intended to harm the complainants on account of their service as witnesses in appellant's criminal case because appellant threatened to kill the victims' family immediately after being told by his probation officer of the statements they had made regarding appellants' offense). Indeed, when Clark was asked why Adams told her that she wanted to get these people, Clark responded, "I believe because she was upset about her son and that that would

8

be who would be involved." And as to Deeds specifically, Tillison testified that she believed the threat was made on account of his status as a public servant.

The evidence is sufficient to support Adams's conviction on all three retaliation counts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. Accordingly, we overrule her sole issue and affirm the trial court's judgment.

PER CURIAM

PANEL: MEIER and GARDNER, JJ.[3]

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 5, 2015

---

[3]Justice McCoy was a member of the original panel but has retired in the interim.

9